PERKETT *v.* MANISTEE & NORTHEASTERN RAILROAD CO.

1. CARRIERS—EVIDENCE—FREIGHT.
    In an action for delay in the shipment of a carload of
    mixed fruit, plaintiff's evidence, tending to show merely
    that his witness had examined ten or twelve barrels of
    apples out of over three hundred, and his knowledge of
    their condition was limited to that inspection and the
    condition of the apples when they were sold six or eight
    weeks later, insufficiently presented or covered the issue
    in relation to the deterioration of the fruit when it was
    received, and did not justify the trial court in leaving
    that question to the jury.

2. SAME—EVIDENCE—PUBLIC INSPECTION.
    Evidence that the peaches contained in the shipment were
    condemned by the health commissioner of Chicago was

not improperly received, although the certificate offered referred to peaches shipped by others than plaintiff, a fair inference being that the goods shipped were included in the condemned lot.

3. SAME—INFERENCES—INSPECTION.

As a rule, physical facts capable of direct proof should not be shown by inference, and it was therefore erroneous to receive in evidence that one who examined the cars of fruit after their arrival was of the opinion that the cars were not iced, when he could have examined the receptacles for the ice and readily ascertained the fact.

Error to Grand Traverse; Mayne, J.    Submitted January 12, 1916.    (Docket No. 101.)    Decided March 31, 1916.

Assumpsit by Louis F. Perkett against the Manistee & Northeastern Railroad Company for damages for the deterioration in value of certain fruit in transit. Judgment for plaintiff.    Defendant brings error.    Reversed.

*Wilson & Wilson* (*Parm C. Gilbert,* of counsel), for appellant.

*John J. Tweddle,* for appellee.

STONE, C. J.    This is an action of assumpsit for damages to two cars of fruit.

Plaintiff is a produce dealer at Traverse City.    On August 23, 1910, he shipped, at that place, in refrigerator cars to Frost Bros., Chicago, a car of apples, and a mixed car of apples, peaches, and plums.    The cars were loaded on the tracks of the Manistee & Northeastern Railroad at Traverse City, were switched promptly to the track of the Pere Marquette, carried by the latter company to Chicago, there turned over to the Illinois Central (on whose tracks was located the warehouse at which the fruit was to be delivered), and by that railroad delivered to the consignees on

Monday, August 29th. The bills of lading were issued by the defendant, and provided that the cars were to be re-iced by the Pere Marquette at Traverse City, Grand Rapids, and Benton Harbor. Plaintiff claims that the fruit reached Chicago more or less decayed, and brought this suit to recover the damages suffered. Two grounds of negligence were alleged, and the case was submitted to the jury on both questions: (1) That there was an unreasonable delay in moving and delivering the cars; (2) that the cars were not properly iced. It is not claimed that this defendant was in any way negligent. Plaintiff testified that defendant moved the cars promptly to the Pere Marquette, and "if there is any fault at all, it is the fault of the connecting lines, and not of the Manistee & Northeastern," but plaintiff recovered by virtue of the Carmack amendment to the interstate commerce act. Plaintiff recovered judgment for $520.18, and error is brought by the defendant. The principal errors relied upon may be grouped under three heads:

(1) The refusal of the court to strike out the testimony of the witness Frost as to the condition of the apples on their arrival in Chicago, and the proportion of them that was unfit for sale, and to charge the jury as requested in defendant's sixth request to charge on that subject, which was as follows:

"There is no evidence in the case as to the amount of the damage, if any, which the apples in the two cars had suffered when they were delivered to Frost Bros. The only evidence on the subject is that of the witness, Jacob Frost, who testified that he inspected only a dozen to 15 barrels out of a total of 327 barrels of apples. He also testified that the apples inspected showed deterioration, but that he could not state the extent of the decay. You are not at liberty to speculate on or guess at the amount that the apples were injured, if any, and I charge you that if you render a verdict for the plaintiff, you cannot include in it

more than nominal damages, that is, six cents on account of damage to apples."

(2) The admission of the certificates of the commissioner of health of Chicago, showing the condemnation of peaches shipped by others than the plaintiff.

(3) That the court erred in submitting to the jury the question whether the cars were properly iced.

1. One of the cars involved in this suit contained 168 barrels of apples. The other contained 159 barrels and 16 baskets of apples and some peaches and plums. The value of the apples, as stated by plaintiff in his claims filed with defendant, was $1,284, while the peaches and plums are worth $210.35. The apples constituted more than 85 per cent. in value of the two cars. The only testimony in the case as to the condition of the apples when they reached Chicago, or of the deterioration they had suffered was that of the witness Frost, who testified as follows:

"The apples were heated; they showed decay. They showed deterioration in the quality of the fruit. The extent of the decay I couldn't state. * * * I inspected them (the apples) inside the house. Rolled some of them into the house from the car, and saw them rolled out. I inspected, I should think, a dozen to 15 barrels. * * * The barrels of apples were headed up in tight barrels and had to be opened with a hatchet. * * * They (the apples) were sold at various times during the month of September, part of them in October. * * * I sold all the apples, or at least 95 per cent. If you add 159 and 168 together you will find how many there were in the lot, and about 10 I dumped, and you will find what I sold. I do not remember what I realized for the 16 bushels of apples I sold. I have a memorandum of everything I do. * * * That is what I base my knowledge on, what the amount of the sales was. * * *

"Q. Can you state approximately what proportion of this fruit, taken altogether, apples, plums, and peaches, were unfit for sale?"

Objection by defendant, because question was not

sufficiently definite. This objection was overruled and an exception taken by the defendant. The witness answered:

"The peaches were 95 per cent. total loss. The plums I should say 25 per cent., and apples at least 35 per cent. damaged by delay in transit."

At this point the motion was made to strike out the testimony as to the apples because they were not sold until September and October, having reached Chicago on August 29th. It seems to us, from an examination of all the testimony of this witness, that he based his knowledge of the condition of the apples upon the examination of 12 or 15 barrels as they were rolled out of the car, and his knowledge of the sales made in September and October. We think this testimony was too vague and indefinite to warrant the submission of the extent and amount of damages suffered, and of the extent of the deterioration when they were delivered to the consignee, and that the court erred in refusing to give defendant's sixth request, above quoted. Not only did the court refuse this, but it also permitted Frost to testify that, based on the sales of the apples he made during the months of September and October, at least 35 per cent. of the apples were "damaged by delay in transit." When it is remembered that the question involved was the condition of these apples when they arrived in Chicago, and not when they were sold 30 or 60 days afterwards, it seems to us that the error of the court is made very clear.

2. We are not able to say from the testimony that the court erred in the admission of the certificates of the commissioner of health of Chicago, showing the condemnation of the peaches shipped, as is claimed, by others than the plaintiff. We think it can be gathered from the record that all of the peaches covered by the certificates were embraced in the shipment, some of the persons named therein being those who delivered

the peaches to the plaintiff at Traverse City. We do not think this point well taken.

3. Did the court err in submitting to the jury the question whether the cars were properly iced? This question is raised by an assignment of error. Upon this subject the plaintiff relied upon the testimony of the witness Frost, who testified:

"I didn't examine the condition of the ice bunkers. I couldn't tell from being in the car and the condition of the car whether there was any ice in the bunkers. I have had occasion during my business career to become familiar with refrigeration of cars of fruit. Before the occasion in question I had, many times, been in cars in which fruit was shipped. It is a frequent occurrence in our business.

"*Q.* I will ask you, from what you observed upon entering that car and your presence in it, to say whether or not the car was iced, whether the bunkers had ice in them?"

This question was objected to by defendant's counsel because it called for a conclusion of the witness whether the car had or had not been iced, and that it was a simple fact to determine by examination of the ice bunkers, and did not require any previous skill, and that it called for a conclusion of the witness as to an ultimate fact, which the court and jury must determine. This objection was overruled and an exception taken. The witness answered:

"I could. There couldn't have been any ice in the bunkers. No employee of our firm helped to unload the cars.

"*Q.* State your reason for saying, from your observation of the car, that there was no ice in the bunkers; that the car was not iced."

This was objected to upon the same grounds as the prior objection. Objection was overruled, exception noted, and the witness answered:

"By going into the cars you can feel the cold air

strike your lower limbs if there is any ice in it, if there is 500 pounds in it. I go into 5 to 20 cars, over 20 every day, every morning, sometimes as high as 50, right on the Illinois Central tracks."

Later the witness testified that it would have been easy for him to have looked into the bunkers, but that he did not do so.

It is urged by defendant's counsel, and we think correctly, that it is not proper to prove a physical fact indirectly and by inference when it is susceptible of direct proof, referring to 17 Cyc. p. 209, and cases cited. The fact seems to have been submitted to the jury whether the cars were iced in accordance with the directions in the bills of lading. Manifestly it cannot be said from this evidence that the cars were not iced as provided in the contract. The burden was on plaintiff to show that fact. There was no evidence that if the cars had been iced as specified in the bills of lading, this would have been sufficient to have brought the fruit to Chicago in good condition. We think the evidence was not sufficient to sustain the allegation that the cars were not properly iced, or to carry that question to the jury.

For the errors pointed out, the judgment below is reversed, and a new trial granted.

KUHN, BIRD, MOORE, STEERE, BROOKE, and PERSON, JJ., concurred. OSTRANDER, J., did not sit.